UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROBERT CHARLES BREWER, JR.**                               **CIVIL ACTION**

**VERSUS**                                                    **NO: 20-3226**

**KILOLO KIJAKAZI,**                                          **SECTION "T" (3)**
**ACTING COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION**

### REPORT AND RECOMMENDATION

Plaintiff Robert Charles Brewer, Jr., brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reason, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, the Commissioner's decision be **VACATED**, and Plaintiff's case be **REMANDED** to the Commissioner of Social Security for further proceedings.

**I.     BACKGROUND**

Plaintiff filed his application for SSI on December 28, 2018, alleging a disability onset date of December 28, 2018. (Rec. Doc. No. 11-2, p. 11). Plaintiff alleged disability due to "mental problems." (Rec. Doc. No. 18-1, p. 1). The Social Security Commissioner denied the claim administratively on April 24, 2019, and upon reconsideration on June 21, 2019. (Rec. Doc. No. 11-2, p. 11). Plaintiff requested a hearing on July 25, 2019, and a hearing was held on February 11, 2020, in front of an administrative law judge ("ALJ"). *Id*. At the hearing, Plaintiff, represented by an attorney, appeared and testified via telephone. *Id*. A vocational expert also testified. *Id*. The ALJ issued a decision denying the claim on April 15, 2020. *Id*. at 20. At the time of the ALJ's

decision, Plaintiff was fifty years old, with an eleventh-grade education and past work experience as a laborer. (Rec. Doc. No. 18-1, p. 1).

Critical to this case, Plaintiff was determined to be entitled to SSI benefits under the Listing of Impairments Section 12.03 in 2014. (Rec. Doc. No. 18-1, p. 1). Thereafter, Plaintiff was incarcerated for approximately two and a half years, and his benefits were terminated. *Id*. His reapplication, the subject of the instant motions, was denied pursuant to the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).[1]

In relevant part, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 28, 2018, the application date. (Rec. Doc. No. 11-2, p. 13). The ALJ determined that Plaintiff had the following severe impairments: antisocial personality disorder, degenerative disc disease of the lumbar spine, and degenerative joint disease of the right knee. *Id*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments to qualify for presumptive disability. *Id*. at 14. The ALJ then concluded that the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), "except occasionally climb ladders, ropes, scaffolds, ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl." *Id*. at 15. The RFC further stated that Plaintiff "is able to perform work where interpersonal contact is incidental to the work performed, where the complexity of tasks is learned and performed by rote; where tasks have few variables, require little judgment and insight, and a level of supervision that is simple, direct and concrete." *Id*. The ALJ concluded that Plaintiff is unable to perform any past relevant work. *Id*. at 19. Finally, with the assistance of the vocational expert, the

---

[1] *See also* Section III. Entitlement to Benefits Under the Act, *infra* pp. 4-5.

ALJ concluded that considering the Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff is capable of performing. *Id*. Thus, the ALJ determined the Plaintiff was not disabled as defined in the Act.

The Appeals Council denied the request for review on September 28, 2020, making the ALJ's decision the final decision of the Commissioner for judicial review. (Rec. Doc. No. 18-1, p. 1).

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm. *Martinez*, 64 F.3d at 173.

Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other

conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence existed to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.   ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only his previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

Plaintiff raises the following two issues on appeal:

(1) Whether the ALJ erred in failing to give *res judicata* effect to the Commissioner's prior determination of disability.

(2) Whether the ALJ erred in evaluating Plaintiff's mental impairment under Listing 12.08 where the Commissioner previously determined him to meet Listing 12.03.

## V. ANALYSIS

**1. Whether the ALJ erred in failing to give *res judicata* effect to the Commissioner's prior determination of disability**

Plaintiff contends that the ALJ committed legal error in failing to recognize the *res judicata* effect of the Commissioner's 2014 finding that Mr. Brewer met Listing 12.03. (Rec. Doc. No. 18-1, p. 3). Plaintiff points to decisions from the Fourth, Sixth, Seventh, and Ninth Circuits holding that *res judicata* "cuts both ways." *Id*. Plaintiff argues that a prior determination should be given preclusive effect unless a change of circumstances is demonstrated by the evidence. *Id*. at 4. Plaintiff contends that there is no substantial evidence supporting the conclusion that his schizophrenia disappeared after he was incarcerated. *Id*. Plaintiff states that pursuant to 42 U.S.C. § 405(h), the determination that Plaintiff met Listing 12.03 was a final decision of the Commissioner, interrupted only by the fact that Plaintiff was incarcerated. *Id*. Plaintiff further notes that courts within the Fifth Circuit have required that the ALJ at least consider the findings made in prior decisions. *Id*. (collecting cases). Plaintiff states that, "[a]t a bare minimum, the ALJ should be required on remand to consider the Commissioner's prior finding to be binding unless additional evidence or change of circumstances provide a basis for a different finding." *Id*.

The Commissioner argues that the arguments put forth by Plaintiff are unfounded and provide an incorrect interpretation of applicable regulations. (Rec. Doc. No. 20-1, p. 5). The Commissioner further states that the ALJ's decision is supported by substantial evidence and remand should be denied. *Id*. The Commissioner contends that when Plaintiff was incarcerated for

more than twelve months, his benefits were terminated, and he was required to file a new application for benefits upon release from incarceration. *Id*. at 6. "The prior application and decision stand alone from the current application and have no bearing on the present decision." *Id*. The Commissioner points to caselaw from the Ninth Circuit, as well as the District of Kansas, in support of the contention that a presumption of continuing disability does not apply when benefits have been terminated due to incarceration for more than twelve months. *Id*. citing *Stubbs-Danielson v. Astrue* 539 F.3d 1169, 1171-72 (9th Cir. 2008); *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1308-09 (D. Kan. 2007).

Both parties agree that the Fifth Circuit has never given a direct, definitive ruling on the issue of whether prior determinations have *res judicata* effect. (*See* Rec. Doc. No. 18-1, p. 3 & Rec. Doc. No. 20-1, p. 6). Plaintiff cites to *Chavez v. Bowen* for the proposition that once there has been a finding of non-disability by Social Security, there is a presumption of continued non-disability thereafter. (Rec. Doc. No. 18-1, p. 3) (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)). Plaintiff further cites to *Lively v. Secretary*, 820 F.2d 1391 (4th Cir. 1987), *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and *Dugan v. Sullivan*, 957 So.2d 1384 (7th Cir. 1992) to establish the rule that a prior determination should be given preclusive effect unless a change of circumstances is demonstrated by the evidence. (Rec. Doc. No. 18-1, pp. 3-4). Finally, Plaintiff cites to courts within the Fifth Circuit applying the principles stated in *Lively*, *Drummond*, and *Dugan*. *Id*. at 4. (citing *Gobert v. Astrue*, 2014 WL 31254 (W.D. La. 2014); *Chapa v. Astrue*, 2012 WL 4797117 (S.D. Tex. 2012); *Shelton v. Astrue*, 2011 WL 1234910 (E.D. Tex. 2011); *Jackson v. Astrue*, 2012 WL 3705262 (W.D. La. Aug. 24, 2014)).[2]

---

[2] Plaintiff also cites to *Cole v. Commissioner*, 16-CV-00027 (N.D. Miss. 2017), however, because this citation lacks relevant information to retrieve the case cited, the Court was unable to review this case for relevancy to the issues.

For its part, the Commissioner cites to *Stubbs-Danielson v. Astrue* for the proposition that there is no basis for applying a presumption of continued disability, noting that the applicable regulations do not provide for automatic resumption of benefits where eligibility has been terminated after twelve consecutive months of suspension. 539 F.3d at 1171-72; *see also Brennan*, 501 F.Supp.2d at 1308-09.

*Res judicata* is a common-law concept which prescribes that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *Res judicata* and the related concept of collateral estoppel are intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudications." *Id*. *Res judicata* bars the re-litigation of the same claim or cause of action, while collateral estoppel bars the re-litigation of the same issue.

Courts have traditionally applied the concept of *res judicata* to decisions by administrative agencies when a final judgment has been reached. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). A decision concerning a claimant's eligibility for social security benefits is an "initial determination" under the social security regulations. 20 C.F.R. § 404.902. An initial determination is binding unless the claimant requests reconsideration, or the Commissioner revises its decision. 20 C.F.R. § 404.905. Accordingly, other circuits have determined that an initial determination is subject to the doctrine of administrative *res judicata*. *Drummond*, 126 F.3d at 841 (citing *Draper*

*v. Sullivan*, 899 F.2d 1127, 1130 (11th Cir. 1990) (rejecting the Commissioner's argument that *res judicata* did not apply because the Social Security Administration was not acting in a judicial capacity and the parties did not have an opportunity to litigate the issues)).

Section 405(h) of the Social Security Act is intended to give finality to the decision of the Social Security Administration. *Drummond*, 126 F.3d at 841. It states in full: "The findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 20 U.S.C. § 405(h).

Thus, administrative *res judicata* precludes repeated reconsideration of decisions made by the Commissioner. *Shelton v. Astrue*, 2011 WL 1234910, at *8 (E.D. Tex. Jan. 31, 2011). Indeed, the Commissioner formally and explicitly embraces the doctrine defensively, stating that an ALJ may dismiss a request for a hearing if "[t]he administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because – [t]he doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 416.1457(c)(1). In other words, the Commissioner's own regulations provide that a claimant's request for a hearing before an ALJ can be dismissed on the basis of *res judicata*. *See id.*

As stated, administrative *res judicata* has been utilized offensively *against* the Commissioner in cases outside this circuit. For example, in *Lively v. Secretary of Health and Human Services*, the plaintiff was denied disability insurance benefits upon his initial application

9

in 1981. 820 F.2d 1391 (4th Cir. 1987). Several weeks after the denial of his claim, plaintiff reached advanced age under the Act, and pursuant to the first ALJ's findings, Plaintiff would have qualified for presumptive disability. *Id*. at 1392. Plaintiff filed a new application in 1983, and after a hearing with an ALJ, the ALJ concluded that Plaintiff was not disabled without discussing the findings of the first ALJ. *Id*. The Fourth Circuit reversed, stating that "[i]t is by now well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases." *Id*. (citing *Benko v. Schweiker*, 551 F.Supp. 698, 701 (D.N.H. 1982)). The Court noted that "Congress has clearly provided by statute that *res judicata* prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final, 42 U.S.C. § 405(h), and the courts have readily applied *res judicata* to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding." *Id*. (citing *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987)). Finally, the Court held:

> The first ALJ found, in 1981, that plaintiff was limited to light work, and the Secretary successfully defended that finding on judicial review. Some two weeks after [plaintiff] was found limited to light work, he became 55 years of age. It is utterly inconceivable that his condition has so improved in two weeks as to enable him to perform medium work. Principles of finality and fundamental fairness drawn from § 405(h), as discussed above, indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work. Certainly, there was no evidence of any such miraculous improvement, and… such evidence, not considered in the earlier proceeding, would be needed as an independent basis to sustain a finding contrary to the final earlier finding.

*Id*. Thus, the Court reversed and remanded for entry of judgment in favor of the plaintiff. *Id*.

Likewise, in *Drummond v. Commissioner of Social Sec.*, the plaintiff argued that the first ALJ's determination that she was limited to sedentary work must be followed by the second ALJ on the principles of *res judicata*. 126 F.3d 837, 839 (6th Cir. 1997). The court concluded:

> Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence. To allow the Commissioner such freedom would contravene the reasoning behind 42 U.S.C. § 405(h) which requires finality in the decisions of social security claimants. Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.

*Id*. at 842.

Courts within the Fifth Circuit have applied the reasoning outlined in *Lively* and *Drummond*. For example, in *Gobert v. Astrue*, the plaintiff argued that *res judicata* applied to findings by the first ALJ prior to remand to a second ALJ. Civ. A. No. 2:12-02103, 2014 WL 31254, at *9 (W.D. La. Jan. 3, 2014). In 2008, the ALJ found plaintiff suffered from severe degenerative joint disease, headaches, obesity, and depression. *Id*. However, in 2011, on remand by the Appeals Council for a correct evaluation of plaintiff's residual functional capacity, a different ALJ made new findings as to her impairments, concluding her only severe impairment was morbid obesity. *Id*. The court noted that "Under 42 U.S.C. § 405(h), finality is given to findings, as well as decisions, made in previous proceedings between the parties." *Id*. Further, "Principles of finality and fundamental fairness drawn from § 405(h) indicate that the Commissioner must shoulder the burden of demonstrating evidence, not considered in the earlier proceeding, that the claimant's [] had changed, in order to provide an independent basis to sustain a finding contrary to the *final* earlier finding." *Id*. (emphasis in original). The court stated, however, that because the first ALJ's decision was not adopted by the Commissioner because the Appeals Council remanded the case to the ALJ, the decision was not a final decision. *Id*. Despite that, the Court determined that the ALJ was required to apply logical reasoning to his findings. *Id*. Quoting *Magee v. Astrue*, the court stated:

> [W]hen an ALJ reviews a nearly identical medical record twice and reaches two distinct conclusions at two different steps in her analysis, there needs to be an explanation as to

11

> why she has altered her original conclusions. Without that, the inconsistency draws into question the entire chain of logic leading to her ultimate conclusion. Accordingly, the case must be remanded to allow the ALJ to reach and express a conclusion that is grounded in an evidentiary analysis that provides a logical thought flow.

*Id*. at 10 (quoting *Magee v. Astrue*, 2012 WL 1156429 (S.D. Ind. 2012)). Likewise in *Gobert*, the court remanded for further proceedings, finding that the second ALJ erred in the findings relevant to plaintiff's impairments and limitations because "given the medical evidence in this case, the ALJ failed to build a 'logical bridge' between the previous ALJ's finding that [plaintiff] suffers from severe impairments of chronic pain, depression, and morbid obesity, and his own findings that [plaintiff's] chronic pain and depression are no longer severe." *Id*. at 11.

Again, following the reasoning in *Lively*, the Court in *Shelton v. Astrue* concluded that as no new evidence had been introduced regarding the plaintiff's physical limitations, the ALJ and the Commissioner were bound, absent such evidence, by the two earlier RFC determinations of an ALJ that was affirmed by the Appeals Council. 2011 WL 1234910, at *9 (E.D. Tex. Jan. 31, 2011). "The Social Security Administration does not have unfettered discretion to reexamine issues previously determined absent new and additional evidence." *Id*. (quoting *Drummond*, 126 F.3d at 842).

First, the Court notes that none of the aforementioned cases are binding on its decision. However, the Court finds the reasoning outlined in *Lively* and *Drummond*, as well as the cases within this Circuit that rely on this reasoning, to be persuasive. The Commissioner's 2014 decision concluding that Mr. Brewer was entitled to SSI under Listing 12.03 based upon his diagnosis of schizophrenia was entitled to some *res judicata* consideration in the subsequent proceeding. Specifically, the Court finds that despite acknowledging that Plaintiff was awarded SSI benefits based upon a determination that Plaintiff met Listing 12.03 for schizophrenia in 2014, (*See* Rec. Doc. No. 11-2, p. 16) ("At the hearing, the claimant acknowledged receipt of SSI benefits based

on schizophrenia…"), the ALJ failed to consider not only any *res judicata* effect of the Commissioner's prior decision, but any evidence of record preceding 2018 at all. This was clear error. Because the ALJ did not even consider the Commissioner's prior determination or the evidence in the record prior to 2018, the ALJ's decision was not supported by substantial evidence in the record as a whole.

In coming to her decision, the ALJ relied only on medical opinions and evidence from 2018 and 2019. The ALJ indicated that she was persuaded by the opinion of Dr. Bourgeois and stated that he opined "the claimant is able to stand continuously in an 8 hour workday; able to walk continuously in 8 hour workday; and limited ability to bend or stoop. Other significant limitation are right knee arthritic changes. However, the claimant ambulates without difficulty and without assistive devise." (Rec. Doc. No. 11-2, p. 18). However, in addition to physical limitations, Dr. Bourgeois' opinion further stated that:

> The claimant has a history of depression, anxiety syndrome, bipolar disorder and Schizophrenia. The claimant has been hospitalized for their mental issues. 2 times. The claimant has had suicide attempt(s). The claimant's last suicide attempt was 2012. The claimant is not currently taking any medication for mental issues. The claimant is able to handle their own finances. *The claimant's mental condition does affect their ability to work.*

(Rec. Doc. No. 14-18, p. 22) (emphasis added). Further, Dr. Bourgeois stated, "Unclear about all of the Mental illness diagnosis since he is not currently on any medications." *Id*. at 23. Finally, Dr. Bourgeois included, "Mental Problems Significant depression, anxiety and suspect undiagnosed PTSD from getting shot multiple times and nearly dying in 2012." *Id*. at 26.

The ALJ also stated that she was persuaded by the opinion of Sandra P. Durdin, who performed a psychological consultation, stating,

> Dr. Durdin opined the claimant's ability to understand and carry out simple instructions is not impaired. His ability to handle familiar detailed instructions is not impaired if sober. His ability to sustain attention for two-hour blocks of time is not impaired. His ability to get along with others, including co-workers and supervisors is mildly impaired. His ability

> to sustain a forty-hour workweek is not impaired if sober and compliant. His ability to withstand routine demands, pressure, and expectations is not impaired for lower to medium demand or those tasks comparable to his educational level.

(Rec. Doc. No. 11-2, p. 18). However, Dr. Durdin also indicates that she never received any records to review, and then states, "[Plaintiff] has no history of any outpatient mental health." (Rec. Doc. No. 14-18, pp. 31-32). This opinion diagnosed Mr. Brewer with "Antisocial Personality Disorder." *Id*. at 34. Antisocial personality disorder is the only severe impairment the ALJ determined Plaintiff suffered from and included as a mental impairment in her opinion. (Rec. Doc. No. 1102, p. 13).

Finally, after reviewing the medical opinions, the ALJ stated, "Despite the impairments, the claimant would not be precluded from performing within the residual functional capacity assessed herein. In addition, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Rec. Doc. No. 11-2, p. 18). This is simply untrue.

A review of the record indicates thousands of pages from the treatment Plaintiff received after he was shot multiple times, spanning 2013 to 2014. Those records include opinions that show mental limitations and *specifically diagnose Plaintiff with schizophrenia*. For example, Dr. Hyon Su Kim of Northlake Behavior Health Systems, in an opinion dated November 25, 2014, specifically diagnosed Mr. Brewer with schizophrenia.

> The patient is a 45-year old African-American male with a past psychiatric history of schizophrenia. The patient stopped taking his medications two years ago. The patient reports he has no income and cannot afford medications. The patient reports to hear voices telling him to hurt himself. The patient is very depressed. He states he has suicidal ideation to get a gun and kill himself. The patient has very poor resources. The patient reports depression, flashbacks, and suicidal thoughts with a plan.

(Rec. Doc. No. 14-9, p. 20). Dr. Kim diagnosed Mr. Brewer with "Schizophrenia, chronic paranoid type." *Id*. Dr. Kim prescribed "Haldol 2 mg p.o. b.i.d., Prozac 20 mg pp.o. q daily," and noted that

14

medication management had assisted Mr. Brewer with "any suicidal or homicidal ideation or auditory or visual hallucinations." *Id*. at 21.

Furthermore, on November 30, 2014, Dr. David D. Clark completed an assessment for the State of Louisiana Disability Determination Services in which he indicated that "Claimant brought medications with him which included Haloperidol and Fluoxetine he states helps in that he doesn't hear the voices when he takes his medications." (Rec. Doc. No. 14-9, p. 33). Dr. Clark reiterated the diagnosis of "Schizophrenia" in his opinion. *Id*. at 35.

In addition to two medical opinions specifically diagnosing Plaintiff with schizophrenia, the record includes multiple mentions of erratic and unstable behavior on the part of Mr. Brewer. While in the hospital recovering from gunshot wounds, Plaintiff underwent a psychiatry consult because of "delirium." (Rec. Doc. No. 13-2, p. 25). "Over the last 24 hours patient has changes in his level of consciousness, paranoia, disorientation, and belligerent speech at times. Last night he was frustrated with being in the hospital and pulled out his trach, peg tube, and foley. He was aware of what he was doing and simply says he 'was mad'… Still requiring 4 point restraints and hand mittens for his own safety." *Id*. Elsewhere, notes state, "[Patient] on the phone with girlfriend and states he[']s been kidnapped and the staff is trying to kill him. Supervisor at bedside explaining place and situation." (Rec. Doc. No. 13-2, p. 54). The next day, notes state, "Dr. Woodall at [bedside] and notified that [patient] is anxious and paranoid stating that 'we are trying to hurt him and all lying to him.'" *Id*. Elsewhere, notes indicate, "Wife said that patient… was recently diagnosed with Paranoid Schizophrenia." (Rec. Doc. No. 13-9, p. 28).

There is no indication that the ALJ even reviewed the evidence prior to 2018, let alone considered any potential *res judicata* effect from the Commissioner's prior determination that Mr. Brewer met Listing 12.03, and this was clear error. The ALJ, as well as the consultative examiners

15

on which the ALJ's opinion relies, should have reviewed the records received that included medical treatment prior to the alleged onset date. The record includes thousands of pages of treating documents from 2014 through 2016 but includes only about fifty pages from the current application period. The records from prior to 2018 are relevant because "[e]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Williams v. Colvin*, 575 Fed.Appx. 350, 354 (5th Cir. 2014) (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)). Furthermore, it violates the Commissioner's own regulations. The ALJ stated, "the undersigned has considered the complete medical history consistent with 20 CFR 416.912." (Rec. Doc. No. 11-1, p. 11). 20 C.F.R. § 416.912 states that the Social Security Administration is responsible for developing the record: "Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application *unless there is a reason to believe that development of an earlier period is necessary* or unless you say that your disability began less than 12 months before you filed your application." § 416.912(b)(1). Here, there was clear reason to believe that development of an earlier period was necessary because Plaintiff was previously determined to be disabled based on a diagnosis of schizophrenia.

The Court is further persuaded by the line of cases that support the proposition that, "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973) (citing *Hall v. Celebrezze*, 314 F.2d 686, 688 (6th Cir. 1963)). It confounds reason that a person formerly diagnosed with schizophrenia, who

maintains before an ALJ that he has schizophrenia, would not have any records reviewed that indicate a diagnosis of schizophrenia. As outlined above, the medical record is rife with documentation of his mental impairments and functioning issues. "The Secretary is not required to prove by substantial evidence that the claimant's disability has ceased; she need only offer additional evidence tending to rebut the presumption of continued disability." *Buckley v. Heckler*, 739 F.2d 1047, 1049 (5th Cir. 1984). No evidence has been offered to rebut the presumption that Plaintiff continues to suffer from schizophrenia. The diagnosis that resulted in a prior finding of disability has simply been ignored, despite the Plaintiff discussing it in depth at the hearing and the ALJ mentioning the side effects Plaintiff expressed in her own opinion numerous times. (*See* Rec. Doc. No. 11-2, p. 15) ("The claimant said he is affected by schizophrenia every day; he has anger, hollers, flashes out, and he hears voices talk to him"; "The claimant stated he is unable to work because he gets paranoid around people"; "The claimant stated he is affected by schizophrenia every day…He has problems with patience and tolerance. The claimant explained he has a 'flash out' every day."). Despite explicitly discussing schizophrenia, the ALJ nowhere addresses any findings that support the notion that the Plaintiff is *not* afflicted with this disorder.

Furthermore, the Court finds support for this in *Brennan v. Astrue*, a case cited by the Commissioner. Although the court determined that there was no error in the failure to apply the medical improvement standard, the court stated, like here:

> Although the agency was correct to require plaintiff to complete a new application for SSI after her release from prison, and although the ALJ was correct not to apply the medical improvement standard of review, the Commissioner had found that plaintiff was disabled because of mental impairments from Apr. 21, 1992 at least until her benefits were terminated in 1998 due to twelve months continuous suspension because of incarceration. In his decision, the ALJ relied upon the facts: (1) that the consultative psychologist, Dr. Ohlde opined that plaintiff could perform some work, (2) that the medical expert, Dr. Golon opined that plaintiff's mental impairments were not disabling and (3) that there was little evidence of psychiatric treatment, in reaching his conclusion that plaintiff can perform a limited range of light work and is not disabled. However, neither Dr. Golon, Dr. Ohlde,

17

> nor Dr. Khanna had access to the majority of the medical records relating to plaintiff's history of disability due to mental impairments or to the earlier opinions of the mental health professionals or the treatment records or opinions of plaintiff's treating therapist. *In the circumstances of this case development of the record regarding the earlier period is necessary to understand the progression of plaintiff's impairments.* While the court acknowledges that there is little evidence of mental health symptoms or treatment in the Kansas Dep't of Corrections' medical record, it is necessary for the mental health professionals to evaluate all of the evidence and determine what plaintiff's mental limitations and restrictions are. *Opinions based upon only part of the available evidence are incomplete and are therefore not based upon substantial evidence on the record as a whole.*

*Brennan v. Astrue*, 501 F.Supp.2d at 1310. (emphasis added).

Likewise, here, the psychological examiners should have had access to all of Plaintiff's past medical records that specifically diagnosed him with schizophrenia, especially considering Plaintiff was unable to remember what medications he was prescribed (*See* Rec. Doc. No. 11-2, p. 16) ("On questioning by the undersigned, the claimant reported he last took medication for schizophrenia before he was incarcerated. He could not remember the name of the medication. He recalled the medication made him stable, calm, and able to communicate with people."), and moreover, the legitimacy of his mental health concerns was questioned by the examiners because of this. (*See* Rec. Doc. No. 14-18, p. 23) (Dr. Bourgeois states, "Unclear about all of the Mental illness diagnosis since he is not currently on any medications.") Further, there is no evidence that the ALJ ever considered the prior evidence, which is clearly relevant to the current application that alleged "mental problems." The ALJ did not provide the records to Dr. Bourgeois or Dr. Durdin and did not seek an updated opinion based upon the review of the evidence in its entirety. Therefore, remand is necessary for the Commissioner to properly review the record regarding the prior period and seek expert medical advice regarding plaintiff's current mental limitations in light of the entire record.

Further, if the Commissioner determines that plaintiff is not disabled again, then the ALJ must explain why she found the Plaintiff not disabled when the claimant had previously been found to be disabled. Although the Court recognizes that there are perfectly legitimate and reasonable reasons for denying benefits at a later date when benefits were awarded prior, those reasons must be set forth by the Commissioner in his decision in order for this court to engage in meaningful judicial review. This does not mean that the medical improvement standard must be applied, but that the decision should include an explanation of the basis from which one might conclude that plaintiff is not disabled, even though he was earlier determined to be disabled. In other words, the ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion." *Gobert*, 2014 WL 31254, at *9. (internal citation omitted). Relevant to that inquiry will be an evaluation of the longitudinal progression of Plaintiff's condition, including evaluation of the medical records and opinions produced before plaintiff was incarcerated, any medical evidence and medical opinions relating to plaintiff's condition and treatment while incarcerated, and medical evidence and opinions relating to plaintiff's condition and treatment after he was released from incarceration. It may also include further consultative examinations, and if so, all relevant medical records should be furnished for review by those examiners. *See* 20 C.F.R. § 416.912(b)(2) ("We may ask you to attend one or more consultative examinations at our expense… Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.").

Because the Court has determined that the prior finding of disability based upon a diagnosis of schizophrenia is entitled to some *res judicata* effect, and because the case must be remanded for a proper evaluation of the medical evidence and medical opinions, it is premature for the court to attempt to evaluate the second issue identified by Plaintiff – whether the ALJ erred

in evaluating Plaintiff's mental impairments under Listing 12.08 where the Commissioner previously determined him to meet Listing 12.03. On remand and after a proper development and evaluation of the medical evidence, the Commissioner must once again consider the credibility of plaintiff's allegations of symptoms and assess plaintiff's RFC and apply the sequential evaluation process to determine if plaintiff is presently disabled.

## VI.   CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, the Commissioner's decision be **VACATED**, and Plaintiff's case be **REMANDED** to the Commissioner of Social Security for further proceedings.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 7th day of July, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**